IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHAUN ROYAL HILL, ) | |
| a/k/a SHAUN ROYALE HILL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-02522-SHL-atc |
| ) | |
| GRADY PERRY, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION UNDER 28 U.S.C. § 2254;
DENYING A CERTIFICATE OF APPEALABILITY;
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH; AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("§ 2254 Petition") filed by Petitioner, Shaun Royal Hill, a/k/a Shaun Royale Hill, Tennessee Department of Correction prisoner number 384541, who is currently incarcerated at the South Central Correctional Facility in Clifton, Tennessee, (ECF No. 1). Because Petitioner's habeas claims are procedurally defaulted, the Court **DENIES** the § 2254 Petition.

**I.    BACKGROUND**

    **A.  State Court Procedural History**

On July 8, 2013, a grand jury in Tipton County, Tennessee returned an indictment charging Petitioner with raping twenty-year-old victim A.B.[1] ("Victim") in Covington, Tennessee, on

---

[1] The Court refers to the Victim by her initials to protect her privacy.

April 7, 2013, in violation of Tenn. Code Ann. § 39-13-503.  (ECF No. 13-1 at PageID 20-22); *see also State v. Hill*, No. W2015-00710-CCA-R3-CD, 2016 WL 3351817, at *1 (Tenn. Crim. App. June 9, 2016) ("*Hill I*"), *perm. app. denied* (Tenn. Sept. 23, 2016).  A jury trial began on August 25, 2014, in the Circuit Court of Tipton County, Tennessee.  (ECF No. 13-4 at PageID 166.)  On August 26, 2014, the jury returned a guilty verdict on the rape charge.  (ECF No. 13-1 at PageID 73.)  *See also Hill I*, 2016 WL 3351817, at *4-5.  On October 10, 2014, the trial judge sentenced Petitioner to fifteen (15) years in confinement and entered judgment.  (ECF No. 13-1 at PageID 92; *see also* ECF No. 13-8 at PageID 532.)

Petitioner filed a direct appeal on April 21, 2015, raising eight (8) issues:  (1) whether the evidence was sufficient to support the jury's verdict; (2) whether the trial court erred by admitting into evidence unauthenticated phone records; (3) whether the jury voir dire and selection processes prejudiced Petitioner because "the jury pool only consisted of two African-American males"; (4) whether the trial court erred by not instructing the jury on the Covington Police Department's duty to preserve evidence; (5) whether the trial court erred by allowing the State to impeach a witness with another witness's criminal history; (6) whether the trial court erred by limiting the scope of defense counsel's cross-examination of the Victim; (7) whether the trial court erred by allowing the State "to make improper comments throughout trial and closing argument"; and (8) whether the trial court erred "when it failed to sentence [Petitioner] to the minimum range of his sentence."  (ECF No. 13-1 at PageID 116; ECF No. 13-11 at PageID 625-26, 632 & 639-60.)  On October 16, 2015, the State filed a brief in opposition.  (ECF No. 13-12 at PageID 663-97.)

On June 9, 2016, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgment.  *Hill I*, 2016 WL 3351817, at *1.  (*See* ECF No. 13-13 at PageID 698-716; ECF No. 13-14 at PageID 717.)  On September 23, 2016, the Tennessee Supreme Court denied Petitioner's application for discretionary review.  (ECF No. 13-16 at PageID 719.)

On July 24, 2017, Petitioner filed a *pro se* petition for post-conviction relief ("PCR Petition"), alleging that:

(1) trial counsel, Charles Brasfield, rendered ineffective assistance of counsel ("IAC") by:

   (a) "failing to move for a mistrial" after the State's "sensationaliz[ed] opening statement" (ECF No. 13-17 at PageID 725) ("Mistrial - Opening Statement IAC Claim");

   (b) "failing to move for a mistrial when the State . . . elicited testimony . . .that [P]etitioner was intoxicated" (*id*. at PageID 728) ("Mistrial - Intoxication Testimony IAC Claim");

   (c) "failing to request funds to hire an independent expert to testify [about] the potential side effects of the [Victim's] medication for bipolar disease" (*id*. at PageID 730) ("Expert Witness Funds IAC Claim");

   (d) failing to request the trial judge's recusal (*id*. at PageID 732) ("Recusal IAC Claim"); and

   (e) failing to object to the "makeup of the jury and the number of jurors who had previously served on prior jury trials" (*id*. at PageID 732) ("Jury IAC Claim");

(2) the prosecutor engaged in misconduct by "advancing improper and unfairly prejudicial testimony" and "deliberately eliciting testimony from [a] witness [who] drew a legal conclusion [about] [P]etitioner['s] intoxication" (*id*. at PageID 732-33) ("Prosecutorial Misconduct Claim");

(3) Petitioner was "deprived of a fundamentally fair trial" by the State's "declarations that defense counsel was unsympathetic and unprepared" (*id*. at PageID 733) ("Fair Trial Claim"); and

(4) the trial court violated Petitioner's Due Process rights by "fail[ing] to grant a continuance and order funds for expert services" (*id*. at PageID 734) ("Due Process Claim").

(*Id*. at PageID 723-36.) The post-conviction relief court appointed counsel for Petitioner. (*Id*. at PageID 737-38.) However, Petitioner's post-conviction counsel did not amend the *pro se* petition. (*Id*. at PageID 744.)

On March 5, 2018, the post-conviction court held an evidentiary hearing ("PCR Hearing") at which Petitioner and Brasfield testified:

> Petitioner testified that he thought trial counsel should have objected to the State's opening statement because the State told the jury about the charges against Petitioner before the jury "even got a chance to even see my side of the story." Petitioner testified that trial counsel should have objected when the Victim testified that Petitioner seemed intoxicated . . . Petitioner then testified that trial counsel did not obtain an expert witness to testify about the side effects of bipolar disorder medications. He felt the Victim would be more prone to lying about the events because she was bipolar and took medication [the "Victim's Bipolar Medication"]. Petitioner testified that trial counsel should have moved for the judge to recuse himself based on the evidence that was admitted at the trial, but Petitioner could not point to any specific behavior or unfavorable ruling that would cause the judge to recuse himself. Petitioner testified that trial counsel was ineffective in picking members of the jury, as women made up the majority of the jury. He stated that he told trial counsel he did not want the women on the jury, but trial counsel told him that majority-women juries were good in this type of case.
>
> [Brasfield] testified that objections to opening statements are very rare and that he did not recall having any reason to object during the State's opening statement. [Brasfield] testified that he did not look into bipolar disorder. He had no information that would cause him to know that the Victim was on medication for bipolar disorder or that she even had any mental illness. [Brasfield] stated that it was a trial tactic to pick a jury made primarily of women based on his conversations with multiple defense attorneys.

*Hill v. State*, No. W2019-00240-CCA-R3-PC, 2019 WL 5957292, at *1 (Tenn. Crim. App. Nov. 8, 2019) ("*Hill II*"); *see* (ECF No. 13-18).

After the PCR Hearing, the post-conviction court dismissed the PCR Petition on March 5, 2018 ("PCR Order"). (ECF No. 13-17 at PageID 745-50.) The post-conviction relief court found that:

(1) Petitioner failed to demonstrate that Brasfield's performance was deficient by:

   (a) not requesting a mistrial based on the State's opening statement,

   (b) not requesting a mistrial based on a lay witness's testimony about Hill's intoxication,

   (c) not hiring an expert about the Victim's Bipolar Medication,

   (d) not seeking the trial judge's recusal,

   (e) not objecting to the makeup of the jury and the number of jurors who had served on other trials; and

4

> (2) Petitioner failed to demonstrate that he was prejudiced by Brasfield's performance.

(*Id.* at PageID 747-49); *see also Hill II*, 2019 WL 5957292, at *1 (also concluding that there is no appellate review of the sentence in a post-conviction proceeding and that the Victim's testimony was sufficient for the jury to convict Petitioner of rape).  Petitioner testified at the PCR Hearing about, *inter alia*, his bases for the PCR Petition's Prosecutorial Misconduct Claim and Due Process Claim (ECF No. 13-18 at PageID 781-85), but the PCR Order did not address the PCR Petition's Prosecutorial Misconduct Claim, the Fair Trial Claim, or the Due Process Claim.  (*See* ECF No. 13-17 at PageID 745-49.)

On January 18, 2019, Petitioner filed a petition for delayed appeal.  (*Id.* at PageID 751-57.) He alleged that David Stockton, the public defender who represented Petitioner at the PCR Hearing, had not informed Petitioner of his right to appeal until the thirty-day appeal period had expired.  (*Id.*)  On January 24, 2019, the TCCA granted Petitioner's motion for delayed appeal. (*Id.* at PageID 758-59 (ordering Stockton to petition the TCCA for a delayed appeal of the PCR Order).)  Stockton filed a notice of appeal with the TCCA on March 1, 2019 (*Id.* at PageID 761-65), and a supporting brief on June 27, 2019 (ECF No. 13-19 ("PCR Appellate Brief")).  The PCR Appellate Brief raised the following issues: (1) the Mistrial - Opening Statement IAC Claim, (2) the Mistrial - Intoxication Testimony IAC Claim, (3) the Expert Witness Funds IAC Claim, (4) the Recusal IAC Claim, and (5) the Jury IAC Claim.  (*See id.* at PageID 809; *cf.* ECF No. 13-17 at PageID 725-34.)  On November 8, 2019, the TCCA affirmed the judgment of the post-conviction court.  *Hill II*, 2019 WL 5957292, at *1.  (*See also* ECF No. 13-21 at PageID 843-46; ECF No. 13-22 at PageID 847.)

### B. The § 2254 Petition

On June 11, 2020, Petitioner filed his § 2254 Petition (*see* ECF No. 1 at PageID 18), which alleges that Brasfield rendered IAC on four (4) occasions:

5

>    (1) By failing to "conduct any pretrial investigation" about the Victim['s] [B]ipolar [M]edication ("Claim 1");
>
>    (2) By failing to "retain an expert witness to testify about the effects of [B]ipolar Disorder and psych meds" ("Claim 2");
>
>    (3) By failing to challenge two female jurors during voir dire ("Claim 3"); and
>
>    (4) By failing to "enter into plea negotiations with the district attorney" ("Claim 4").

(*Id*. at PageID 14-15.)  Petitioner asks the Court to vacate his rape conviction and to remand for a new trial.  (*Id*. at PageID 17.)

The Court issued an Order on July 21, 2020, directing Respondent Grady Perry to file the state-court record and a response to the § 2254 Petition, which he did on August 27, 2020.  (ECF Nos. 8, 13.)  Respondent filed his Answer to Petition for Writ of Habeas Corpus on September 17, 2020, arguing that the § 2254 Petition should be dismissed because its claims are procedurally defaulted.  (ECF No. 15 at PageID 850.)  Petitioner did not file a reply to the Answer, and the deadline to do so has expired.  (*See* ECF No. 8 at PageID 5.)

## II.     STANDARDS OF REVIEW

### A.  Exhaustion

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas petition to the state courts pursuant to 28 U.S.C. §§ 2254(b) and (c).  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The petitioner must "fairly present" each claim to each appropriate state court, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).  Tennessee Supreme Court Rule 39, effective June 28, 2001, eliminated the need to seek review in the Tennessee Supreme Court to

"be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

To fairly present a federal claim, a prisoner must present the same facts and legal theory to the state courts as is raised in his federal habeas petition. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971); *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) ("The exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review") (internal quotation marks and alteration omitted). In evaluating whether a prisoner has "fairly presented" a claim to a state appellate court, the controlling document is the inmate's brief. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

### B.  Procedural Default

The procedural default doctrine is inseparable from the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011).

If a claim has never been presented to the state courts and a state court remedy is no longer available (such as when an applicable statute of limitations bars a claim), the claim is technically exhausted due to the expiration of potential remedies, but it is still barred by procedural default. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Tennessee's one-year statute of

limitations and "one-petition" rule on post-conviction petitions generally prevent a return to state court to litigate any additional constitutional claims. *See* Tenn. Code Ann. §§ 40-30-102(a) (one-year limitation period), 40-30-102(c) ("one-petition" rule); *Hodges*, 727 F.3d at 530 (noting that a Tennessee petitioner "no longer has any state court remedies to exhaust" when he failed to present a claim in initial post-conviction petition). To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the trial court and, on appeal, to the TCCA. *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004) (holding that a federal habeas petitioner in Tennessee must present his federal claims to the TCCA to avoid procedural default). Accordingly, where a Tennessee habeas petitioner fails to fairly present his federal claim to the State courts before filing his federal habeas petition, there is generally no longer a State remedy to exhaust. In such cases, the claim is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Due to Tennessee's "one-petition" rule for post-conviction proceedings, Petitioner cannot now bring a claim in state court. *See* Tenn. Code Ann. § 40-30-102(c).

Under either scenario, a petitioner must show: (1) cause to excuse his failure to present the claim; and (2) actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995); *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536-39 (2006) (holding that a petitioner must show "cause for the default and prejudice from the asserted error" to permit consideration of the merits of a procedurally defaulted claim); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). A petitioner may establish cause by "show[ing] that some objective factor external to the defense"–a factor that "cannot be fairly attributed to" the petitioner– "impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, 582 U.S.

8

521, 528 (2017) (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (internal quotation marks omitted). The burden of showing cause and prejudice is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). To demonstrate a fundamental miscarriage of justice, a petitioner must establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321.

### C. Ineffective Assistance of Counsel

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 669.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S. Ct. 2052.

9

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.") (citing *Strickland*, 466 U.S. at 694).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

"There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (internal citations omitted). However, the United States Supreme Court in *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012) recognized a narrow exception to *Coleman*'s general rule. Under *Martinez*, where claims of IAC must, under state law, be raised

10

in an initial-review collateral proceeding, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17.  The Supreme Court emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in other proceedings beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . ." *Id.* at 16.  The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of a substantial claim of ineffective–assistance–at trial.  *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 16-17).

> For a procedural default to be excused under *Martinez*, a petitioner must demonstrate:
>
> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim;
>
> (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding;
>
> (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and
>
> (4) state law *requires* that a claim of "ineffective assistance of trial counsel . . . be raised in an initial-review collateral proceeding."

*Id.* (quoting *Martinez*, 566 U.S. at 16-17).  A claim is substantial if it has "some merit" based on the controlling standard for IAC stated in *Strickland*.  *Martinez*, 566 U.S. at 14.

Under *Martinez*, ineffective assistance of post-conviction counsel does not create cause to excuse the procedural default of a claim of ineffective assistance of appellate counsel.  *See Davila*, 582 U.S. at 529; *Hodges*, 727 F.3d at 531 ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.").

11

In the Supreme Court's subsequent decision in *Trevino*, the Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. . ." 569 U.S. at 429.  Thus, *Trevino* modified the fourth requirement under *Martinez* for overcoming a procedural default.  The Sixth Circuit held in *Sutton v. Carpenter* that IAC of state post-conviction counsel can establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that his trial counsel was constitutionally ineffective.  745 F.3d 787, 790 (6th Cir. 2014).

The Court will now address the Respondent's argument that the § 2254 Petition's IAC claims are procedurally defaulted.  (*See* ECF No. 15 at PageID 870-77.)

### III.  ANALYSIS

#### A. Pretrial Investigation of the Victim's Bipolar Medication (Claim 1) Failure to Retain Expert Witness (Claim 2)

In Claims 1 and 2, Petitioner alleges that Brasfield was deficient because he "failed to conduct any pretrial investigation into the case" (ECF No. 1 at PageID 14), which Petitioner contends: (1) would have shown the Victim used Bipolar Medication that "might affect [her] recollection of the events leading up to the alleged crime" and "may have affected her veracity at trial" (*id*. at PageID 14-15); and (2) should have led Brasfield to "retain an expert witness to testify about the effects of [the Victim's Bipolar Medication]." (*Id*. at PageID 15.)  Petitioner generally alleges that "had trial counsel conducted a proper and adequate investigation prior to trial, he would have discovered potential evidence that could reasonably [have] resulted in a more favorable result for Petitioner." (ECF No. 1 at PageID 16.)

The Court considers Claims 1 and 2 jointly because they relate to the same substantive point: Petitioner's allegation that trial counsel was ineffective in relation to the Victim's Bipolar Medication ("IAC-Medication Claim").

12

The PCR Petition alleged that Brasfield "fail[ed] to request funds to hire an independent expert" to testify about the effects of the Victim's Bipolar Medication on her truthfulness. (ECF No. 13-17 at PageID 730.) The post-conviction court ruled that Petitioner failed to demonstrate Brasfield's ineffectiveness because Petitioner had "failed to show what an expert would have testified to and how it would have been beneficial." (*Id*. at PageID 748.) The PCR Appellate Brief claimed that Brasfield was deficient in "failing to seek funding for an expert on the potential side effects of [Victim's Bipolar Medication]." (ECF No. 13-19 at PageID 808.) The TCCA determined that Petitioner waived the expert-funding IAC claim under Tenn. R. Ct. Crim. App. 10(b)[2] because the Petitioner "failed to cite any legal authority supporting his arguments in his brief":

> As an initial matter, Petitioner has failed to cite any legal authority supporting his arguments in his brief, including failing to even mention the *Strickland* standard for ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In failing to do so, Petitioner has waived all of his issues. *See* Tenn. R. Ct. Crim. App. 10(b); *State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016). Moreover, despite acknowledging that he has the burden of showing that counsel's performance was deficient and that the deficiency was prejudicial, Petitioner concedes that the post-conviction court correctly ruled on each of his issues yet "asks that the court review the transcript of the Petition for Post[-]Conviction Relief and determine whether the findings of [the post-conviction court] were erroneous or an abuse of discretion or so egregiously wrong that it would be manifestly unjust to allow his findings to stand." "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2016). Because Petitioner has waived and conceded all of his issues on appeal, he is not entitled to relief.

*Hill II*, 2019 WL 5957292, at *2; (*See also* ECF No. 13-21 at PageID 845).

Therefore, to the extent that Petitioner previously raised the IAC-Medication Claim in state court, that claim is procedurally barred by Tenn. R. Ct. Crim. App. 10(b) because the TCCA

---

[2] Tenn. Ct. Crim. App. R. 10(b) provides: "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

13

decided that claim on independent and adequate state law grounds. The Sixth Circuit has "recognized that Rule 10 of Tennessee's criminal rules is a 'firmly established and regularly followed' rule, and therefore 'adequate'" grounds to dismiss a claim independent of the federal question it attempts to raise. *Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013) (quoting *Middlebrooks v. Bell*, 619 F.3d 526, 535-36 (6th Cir. 2010) (holding that claims denied under Tenn. Ct. Crim. App. R. 10(b) and Tenn. R. App. P. 27(a)(7) are defaulted) (judgment vacated on other grounds)). The TCCA ruled on Petitioner's IAC-Medication Claim on the independent and adequate state ground of Rule 10(b). Petitioner is barred from seeking federal habeas review of the IAC-Medication Claim, which is procedurally defaulted. *See Wainwright*, 433 U.S. at 87-88; *Walker*, 562 U.S. at 315.

To the extent the § 2254 Petition's broadly-alleged "pretrial investigation" claim (ECF No. 1 at PageID 14) relates to failure to investigate issues other than the Victim's Bipolar Medication, such claims were not raised in state court and therefore were not exhausted. (*See* ECF No. 13-17 at PageID 748; ECF No. 13-21 at PageID 845); *Cullen*, 563 U.S. at 181; *Baldwin*, 541 U.S. at 29; *Anderson*, 459 U.S. at 6-7; *Hodges*, 727 F.3d at 529.

Petitioner's procedural default of Claims 1 and 2 is not excusable. He has not responded to the Respondent's Answer, and thus has not met his burden of demonstrating cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of the IAC-Medication Claim. *See Lucas*, 179 F.3d at 418; *Schlup*, 513 U.S. at 320-21.

Further, Claims 1 and 2 are not substantial under *Martinez* for the reasons stated in the PCR Order:

> [Petitioner] failed to show what an expert would have testified to and how it would have been beneficial. Whenever a claim of ineffective assistance is based on failure to submit proof, there must be a showing of what the evidence would have been. Post-conviction counsel stated that he could find no . . . expert theory that would have benefitted Petitioner.

14

(ECF No. 13-17 at PageID 748.) Petitioner does not demonstrate that any particular "pretrial investigation" by Brasfield would have led to the exclusion of the Victim's testimony or successful challenges to its truthfulness. He does not explain precisely what proof Brasfield could have discovered pretrial that would have undermined the Victim's trial testimony. Petitioner does not: (1) demonstrate that an expert witness was available to testify about the effect of the Victim's Bipolar Medication on her truthfulness; (2) identify what such expert would have said; or (3) demonstrate how such testimony would have (a) undermined or led to the exclusion of the Victim's testimony or (b) otherwise changed the trial's outcome. "In the absence of such a showing, he has failed to establish that this claim is substantial." *See Church v. Lindamood*, No. 3:16-cv-0726, 2016 WL 6194262, at *11 (M.D. Tenn. Oct. 24, 2016). Moreover, Petitioner had no constitutional or statutory right to expert assistance to support his defense at trial. "Tennessee courts have repeatedly held that a defendant is not entitled to funds for the employment of an expert witness in noncapital cases . . . [O]ur legislature has provided statutory authority for the compensation of a defendant's expert in capital cases only." *State v. Harris*, 866 S.W.2d 583, 585 (Tenn. Crim. App. 1992) (citing Tenn. Code Ann. § 40-14-207(b)); *accord Davis v. State*, 912 S.W.2d 689, 697 (Tenn. 1995); *see also* Tenn. Sup. Ct. R. 13, § 5(a)(2) ("In non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved."). Claims 1 and 2 lack "some merit," based on the controlling standard for IAC stated in *Strickland*, and thus are not substantial. *See Martinez*, 566 U.S. at 14.

For these reasons, Petitioner cannot overcome his procedural default of the IAC-Medication Claim. Claims 1 and 2 in the § 2254 Petition are barred by procedural default and are **DISMISSED**.

### B. Two Female Jurors (Claim 3)

In Claim 3, Petitioner argues that Brasfield was ineffective because "two female jurors who indicated they had been Victims of sexual assault were selected and sat on Petitioner's jury" (referred to as the "Two Female Jurors"). (ECF No. 1 at PageID 15.)

The PCR Petition Jury IAC Claim challenged Brasfield's failure to object to "the number of jurors who had previously served on prior jury trials." (ECF No. 13-17 at PageID 732.) During the PCR Hearing, Petitioner argued that "there were too many women on the jury," and Brasfield testified that "as a trial strategy he felt females would be good jurors." (*Id.* at PageID 748.) The post-conviction trial court accepted Brasfield's strategy as effective assistance. (*See* ECF No. 13-17 at PageID 748.) During post-conviction proceedings, Petitioner challenged the makeup of the jury generically, based on their gender—not their sexual assault history. (*See* ECF No. 13-18 at PageID 780, lines 12-14 (Stockton: "[W]hat in your mind was bad about the makeup of the jury?" Petitioner: "All women.").) The post-conviction trial court ruled that Petitioner "has not shown how counsel was deficient in this regard." (ECF No. 13-17 at PageID 748.)

Petitioner's post-conviction claim about the jury's composition generally and his habeas claim about the Two Female Jurors' sexual assault history are not the same claim. Petitioner did not exhaust Claim 3 in state court. *See Anderson*, 459 U.S. at 6-7 ("[T]he habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim."); *Hodges*, 727 F.3d at 529. The Court rejects Respondent's argument that Claim 3 was waived during post-conviction appellate proceedings. (*See* ECF No. 15 at PageID 875.) Petitioner did not present Claim 3 to the TCCA. (*See* ECF No. 13-21 at PageID 845.)

Further, Petitioner is barred from filing another post-conviction petition because of Tennessee's one-year statute of limitations and because of the "one-petition" rule. *See* Tenn. Code

Ann. §§ 40-30-102(a), (c). Because there is no longer any means for presenting to the state courts the IAC issue as to the Two Female Jurors, Claim 3 is barred by procedural default.

Petitioner's procedural default of Claim 3 is not excusable because he has not met his burden of demonstrating cause and prejudice or a fundamental miscarriage of justice. *See Lucas*, 179 F.3d at 418; *Schlup*, 513 U.S. at 320-21.

Further, Claim 3 is not substantial under *Martinez*. To prevail on an IAC claim based on counsel's conduct during voir dire, a habeas petitioner must demonstrate that a juror had an actual bias against him. *Hanna v. Ishee*, 694 F.3d 596, 617 (6th Cir. 2012) (finding no prejudice resulting from ineffective voir dire because "Petitioner cannot show. . . that the juror harbored any actual bias"); *see also Murff v. Mills*, No. 05-cv-2164, 2005 WL 2114049, at *1 (W.D. Tenn. Aug. 30, 2014). The § 2254 Petition does not offer any facts from which one could infer that the Two Female Jurors were actually biased against Petitioner. The Two Female Jurors stated that, although they had each been a victim of a sex crime in the past, they could decide the case fairly. (ECF No. 13-4 at PageID 185 & 203-05.) The fact that the Two Female Jurors had experienced sexual assault does not mean that they are presumed to be biased against the defense, or that they are actually biased. *See, e.g.*, *Gonzales v. Thomas*, 99 F.3d 978, 989-90 (10th Cir. 1996) (concluding that the court cannot presume as a matter of law that a juror in a rape case was biased because she had experienced sexual assault); *Davenport v. Davis*, No. 07-12047, 2009 WL 960411, at *5 (E.D. Mich. Apr. 7, 2009) (denying habeas relief on claim that counsel erred by not challenging juror who had been victim of child sexual assault for cause or on peremptory basis). Petitioner fails to overcome this presumption. His allegations of bias are speculative at best. The § 2254 Petition alleges no facts demonstrating that the verdict at trial would have been different if the Two Female Jurors had not sat on the jury.

For these reasons, Petitioner cannot overcome his procedural default of Claim 3. Claim 3 is barred by procedural default and is **DISMISSED**.

### C. Plea Negotiations (Claim 4)

In Claim 4, Petitioner alleges that Brasfield was ineffective by "fail[ing] to enter into plea negotiations." (ECF No. 1 at PageID 15.) The Petitioner contends that, "[h]ad [Brasfield] conducted a pretrial investigation into the case, and discovered that the alleged Victim was suffering from mental illness, which may have affected her judgment, recollection of the events leading up to and during the sexual encounter with Petitioner, and her veracity, it is certainly in the realm of possibility that the prosecution would have offered a favorable plea deal to Petitioner." (*Id*. at PageID 16.)

Petitioner did not raise Claim 4 on direct appeal (*see* ECF No. 13-11 at PageID 632) or in the post-conviction proceedings. (*See* ECF No. 13-17 at PageID 725-32; ECF No. 13-19 at PageID 808.) Petitioner did not exhaust any claims about plea negotiations in state court under *Martinez*. (*See id*.) Because there is no longer any means for presenting Claim 4 to the state courts, Claim 4 is barred by procedural default due to Tennessee's one-year statute of limitations and the "one petition" rule. *See* Tenn. Code Ann. §§ 40-30-102(a) & (c).

Petitioner does not meet his burden of demonstrating cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of Claim 4. *See Lucas*, 179 F.3d at 418; *Schlup*, 513 U.S. at 320-21. His argument that, but for Brasfield's IAC, Petitioner would have received a "favorable plea deal" (*see* ECF No. 1 at PageID 16) is not supported by facts and is pure speculation. What is more, Petitioner does not demonstrate that, had some theoretical plea deal been conveyed pretrial, he would have accepted it. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

For these reasons, Petitioner cannot overcome his procedural default of Claim 4. Claim 4 is barred by procedural default and is **DISMISSED**.

## IV.     APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, § 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773 (quoting *Miller-El*, 537 U.S. at 337).

In this case, there is no question that the claims in Petitioner's § 2254 Petition are procedurally defaulted, therefore the Court **DENIES** a COA.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith,

19

or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[3]

      **IT IS SO ORDERED**, this 6th day of September, 2023.

                                                s/ Sheryl H. Lipman
                                                SHERYL H. LIPMAN
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

[3] If the Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this Order. *See* Fed. R. App. P. 24(a)(5).